**Paula Edna JOHNSON, Plaintiff,**

v.

**KMART CORPORATION, Hal Lewis, and Mark Kuhlman, Defendants.**

Civil Action No. 95–0075–H.

United States District Court,
W.D. Virginia,
Harrisonburg Division.

Sept. 11, 1996.

Thomas Davis Logie, Thomas D. Logie, P.C., Front Royal, VA, for Paula Edna Johnson.

Robert Craig Wood, McGuire, Woods, Battle & Boothe, Charlottesville, VA, for Kmart Corporation, Hal Lewis and Mark Kuhlman.

### MEMORANDUM OPINION

MICHAEL, Senior District Judge.

On July 5, 1996, United States Magistrate Judge B. Waugh Crigler issued a Report and Recommendation in which he recommended this court grant in part and deny in part the motion for summary judgment filed by Defendants Kmart Corporation ("Kmart"), Hal Lewis, and Mark Kuhlman pursuant to Fed. R.Civ.P. 56. Plaintiff Paula Edna Johnson and defendants have filed objections to the Magistrate's Report; therefore this court must undertake de novo review of the case. *Orpiano v. Johnson,* 687 F.2d 44, 48 (4th Cir.1982). For the reasons stated below, the court adopts the Magistrate's Report insofar as it grants defendants' motion for summary judgment on the issue of individual liability, and overrules the Report insofar as it denies defendants' motion for summary judgment on the issue of Kmart's liability. Defendants are entitled to summary judgment on plaintiff's claims against Lewis, Kuhlman, and Kmart. Defendants' requests for costs and attorneys' fees is denied.

### I.

The source of this litigation arose in April 1994, when Kmart initiated a new policy to eliminate "sweetheart schedules"—schedules which require no weekend work—in its stores. This policy required plaintiff (and all other employees, *see* Pl.'s Compl. at ¶ 3), who at the time held the position of Personnel and Training Manager at Kmart, to work one Sunday per month, whereas previously she was able never to work on Sundays. Because work on Sunday interfered with plaintiff's religious beliefs, she resigned from her position on November 5, 1994. Plaintiff told Kmart in her exit interview that she was "[f]orced to choose between church on Sunday and Kmart." Lewis and Kuhlman, two Kmart managers, offered plaintiff an accommodation—she could work either before or after church on Sundays, but plaintiff refused this offer. Plaintiff proposed a counter-offer; she requested a job in Kmart's pharmacy which was closed Sundays. Kmart declined to give plaintiff this job because of costs it would have to incur in training plaintiff and paying plaintiff wages and benefits as a full-time employee in the pharmacy. Kmart preferred to hire two part-time employees, because it would be less costly to do so, and it would give Kmart more scheduling flexibility. On September 1, 1995, plaintiff filed a suit claiming that defendants had discriminated against her based on her religious beliefs in violation of Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"). Defendants moved for summary judgment pursuant to Fed.R.Civ.P. 56(c). The Magistrate found that Defendants Lewis and Kuhlman could not be held individually liable under Title VII, and, accordingly, he granted defendants' motion for summary judgment insofar as these defendants were concerned. However, relying on *Benton v. Carded Graphics, Inc.,* 28 F.3d 1208, 1994 WL 249221 (4th Cir.1994) (per curiam) (unpublished opinion), the Magistrate concluded that summary judgment should not issue in favor of Kmart, reasoning that a finder of fact could conclude that Kmart had violated Title VII by failing to reasonably accommodate plaintiff's religious beliefs. Defendants have objected to the Magistrate's Report on two grounds: first, they contend that the accommodation offered plaintiff was sufficient as a matter of law, and no further accommodation was required; second, they maintain that no adverse employment decision was taken against plaintiff— she resigned of her own free will, defendants claim. Plaintiff objects to the Magistrate's conclusion that the individual defendants in this case cannot be held individually liable under Title VII.

### II.

Summary judgment is appropriate only when there are no genuine issues of material fact in dispute, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Miller v. Leathers,* 913 F.2d

1085, 1087 (4th Cir.1990) (en banc). The initial burden is on the moving party to demonstrate that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). Once the movant meets this burden, the nonmoving party must come forward with affidavits, depositions, or other admissible evidence, to show that material facts remain in dispute. *Catawba Indian Tribe v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir.1992). The facts, and the inferences therefrom, must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Nguyen v. CNA Corp.*, 44 F.3d 234, 237 (4th Cir.1995). However, a "mere ... scintilla of evidence" will not defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," summary judgment must issue. *Celotex*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53.

### III.

Section 2000e–2(a) of Title VII prohibits covered employers from taking adverse employment decisions against employees based on their religious views. 42 U.S.C. § 2000e–2(a). Most courts of appeals dealing with claims of religious discrimination have adopted a burden-shifting scheme similar to that in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). First, the plaintiff must establish a prima facie case of discrimination by showing that (1) she has a bona fide religious belief conflicting with an employment requirement; (2) she has informed the employer of this belief; and (3) she suffered an adverse employment decision due to her failure to satisfy the conflicting employment requirement. *See Cary v. Carmichael*, 908 F.Supp. 1334, 1342–43 (E.D.Va.1995) (citing cases). After the employee has made out a prima facie

case, an employer may avoid liability for making decisions that effectively discriminate on the basis of religion if the employer "demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. 2000e(j); *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74, 97 S.Ct. 2264, 2271–72, 53 L.Ed.2d 113 (1977). In *Hardison*, the Supreme Court defined "undue hardship" to mean any accommodation that results in "more than a *de minimus* cost" to the employer. *Id.* at 84, 97 S.Ct. at 2277.

### IV.

Defendants argue (1) that Kmart offered plaintiff a reasonable accommodation as a matter of law; or, alternatively, (2) that an accommodation would have imposed an undue hardship on Kmart as a matter of law. The validity of these arguments need not be addressed by the court. This is because plaintiff's case falters at a more fundamental stage: plaintiff has failed to produce any evidence that Kmart took any adverse employment action against her, an indispensable requirement under Title VII. *See Cary*, 908 F.Supp. at 1342–43. Plaintiff essentially concedes that the only possible discriminatory action taken against her relates to her resignation from Kmart.[1] Hence, plaintiff's allegation is that she was constructively discharged.

To demonstrate constructive discharge, plaintiff must (1) show that defendants created intolerable working conditions; and (2) that they did so deliberately, in an effort to force plaintiff to leave their employ. *Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1132 (4th Cir.1995) (quoting *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1354 (4th Cir.1995)). "Intolerability is 'assessed by the objective standard of whether a "reasonable person" in the employee's position would have felt compelled to resign.' " *EEOC v. Clay Printing Co.*, 955 F.2d 936, 944 (4th Cir.1992) (citations omitted). "Deliberateness exists only if the actions com-

---

1. Plaintiff makes no claim that defendants actually fired her.

plained of 'were intended by the employer as an effort to force the employee to quit.' " *Id.* (citations omitted). Fourth Circuit precedent "require[s] proof of the employer's specific intent to force an employee to leave." *Bristow v. Daily Press, Inc.*, 770 F.2d 1251, 1255 (4th Cir.1985) (citations omitted). "Where ... all employees are treated identically, no particular employee can claim that difficult working conditions signify that employer's intent to force that individual to resign." *Id.* (citations omitted); *Johnson v. Shalala*, 991 F.2d 126, 131 (4th Cir.1993) (quoting *Johnson v. Bunny Bread Co.*, 646 F.2d 1250, 1256 (8th Cir.1981) (stating that "fact that employees were treated identically rebuts any inference" of constructive discharge)).

■ Although the Fourth Circuit has recognized that this categorical rule might not work in situations where unequal treatment is required, or, in other words, where reasonable accommodation must be offered, *see Shalala*, 991 F.2d at 131–32, the Fourth Circuit has cautioned courts not to find constructive discharge in every instance where the employer has failed to reasonably accommodate the employee. *Id.* (stating that a failure to accommodate in violation of the Rehabilitation Act, 29 U.S.C. § 701 *et seq.* does not necessarily translate into constructive discharge). To permit an employee to quit and to claim constructive discharge immediately after an employer has violated an employment anti-discrimination law, the Fourth Circuit explained, would be to foreclose the possibility of mediation and resolution of the problem without resort to litigation; further, it would reduce the chance that the employment relationship could be salvaged. *Id.* Thus, the Fourth Circuit has held that while "complete failure to accommodate, in the face of repeated requests" might establish "deliberateness," generally "plaintiff must present some evidence that the employer intentionally sought to drive her from her position." *Id.* at 132.

Even assuming that working conditions for plaintiff were intolerable because her religious belief prohibited her from working on Sundays, plaintiff simply cannot show that Kmart deliberately adopted the requirement that plaintiff work one Sunday per month to induce her to quit her job. By plaintiff's own account, all employees were subject to this requirement. Moreover, defendants attempted to accommodate plaintiff's religious beliefs—they offered her the opportunity to attend services on Sundays so long as she worked before or after church. It may very well be that this accommodation was insufficient under Title VII, *see EEOC v. Ithaca Indus., Inc.*, 849 F.2d 116 (4th Cir.1988), but this attempted "partial or imperfect accommodation," *Shalala*, 991 F.2d at 132, constitutes evidence that defendants had no wish to see plaintiff leave. Meanwhile, aside from assertions that she was "forced" to leave, plaintiff has produced not an iota of evidence from which a reasonable fact-finder could infer that defendants wanted plaintiff to quit her job.[2] Because plaintiff cannot show constructive discharge and, consequently, cannot establish a prima facie case of religious discrimination under Title VII, Defendants Kmart, Lewis, and Kuhlman are entitled to summary judgment under Fed.R.Civ.P. 56(c).

## V.

In light of the court's holding, it is unnecessary to address plaintiff's objections to the Magistrate's finding that individual employees cannot be held liable for allegedly discriminatory discharge under Title VII. However, because the matter is so well-settled, it bears repeating that even supervisory employees do not fall within the definition of "employer" under § 2000e(b) of Title VII, and therefore Title VII liability for allegedly discriminatory discharge cannot be imposed on employees in their individual capacity. *See Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507 (4th Cir.1994) (citing with approval *Miller v. Maxwell's Int'l Inc.*, 991 F.2d 583, 587 (9th Cir.1993) (holding that individual

---

**2.** The Virginia Employment Commission (to which plaintiff applied for unemployment benefits) found that plaintiff's job had become "unsuitable," based on plaintiff's representations regarding her resignation. Even if this finding were binding on this court (which it is not), it has no bearing on whether defendants acted deliberately.

employees cannot be held personally liable under Title VII)).

## VI.

Defendants have asked for costs and attorney's fees. This is not a case that warrants such relief. Therefore, defendants' request is denied.

An appropriate Order shall this day issue.