**Malinda AZIE, Plaintiff,**

v.

**BELLSOUTH ADVERTISING & PUBLISHING CORPORATION, Defendant.**

**No. CIV. 3:97CV592.**

United States District Court, W.D. North Carolina, Charlotte Division.

March 8, 2000.

Roger Wade Rizk, Charlotte, NC, for Plaintiff.

Richard E. Fay and Deanna Ruddock Lindquist, Charlotte, NC, for Defendant.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

THIS MATTER is before the Court on Plaintiff's timely filed objections to the Memorandum and Recommendation of United States Magistrate Judge Carl Horn III. Pursuant to standing orders of designation and 28 U.S.C. § 636, Defendant's motion for summary judgment was referred to the Magistrate Judge for a recommendation as to disposition. Plaintiff objects to the recommendation that summary judgment be granted for Defendant and that the action be dismissed. For the reasons stated below, the Court adopts the recommendation and dismisses the action.

### I. STANDARD OF REVIEW

The Court reviews *de novo* those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. 28 U.S.C. § 636(b).

"The district judge must not be a rubber stamp" and "has a duty to reject the Magistrate Judge's recommendation unless, on *de novo* reconsideration, he or she finds it justified." 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3070.2 (1997). Those parts of a Magistrate Judge's Memorandum and Recommendation to which no specific objections are filed are given careful review. *Orpiano v. Johnson,* 687 F.2d 44, 47 (4th Cir. 1982).

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any matter of fact and that the moving party is entitled to summary judgment as a matter of law." Fed.R.Civ.P. 56(c). If a defendant makes such a showing, the burden shifts to the nonmoving party, the plaintiff, to convince the Court that a triable issue does exist. *Shaw v. Stroud,* 13 F.3d 791, 798 (4th Cir.1994) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the [Plaintiff]." *Id.* To demonstrate a genuine issue and avoid summary judgment, the Plaintiff must present specific and material evidentiary facts. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 364 (4th Cir.1985). The Plaintiff may not rest on mere allegations alone. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Nor will a "mere scintilla of evidence" be sufficient to defeat summary judgment. *Stroud,* 13 F.3d at 798. If the Plaintiff does not meet this burden; then summary judgment for the Defendant is warranted as a matter of law.

In considering the facts of the case for purposes of this motion, the Court will view the pleadings and material presented in the light most favorable to Plaintiff as the nonmoving party. *Matsushita Electric,* 475 U.S. at 574, 106 S.Ct. 1348.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff has failed to offer any affidavit, discovery response, or deposition transcript in support of her allegations. Nor does she provide citations to such material in her memoranda of law. Consequently, the Court must rely heavily on the evidence produced by Defendant in determining the facts. Nevertheless, the Court views these facts in the light most favorable to the Plaintiff as the nonmoving party.

Because Plaintiff submitted no additional citations or evidence in conjunction with her objections, the Court will rely on the factual background as set forth in the Memorandum and Recommendation. After reviewing the factual record, the Court finds the Magistrate Judge's findings to be correct, detailed, and accurate. Consequently, the Court offers only a brief explanation of the factual background of this case here.

Plaintiff Malinda Azie, an African–American female, was employed as a Directory Telephone Sales Representative ("DTSR") with Defendant BellSouth Advertising and Publishing Company from March 11, 1985, through May 6, 1996. Excerpts from Deposition Transcript of Malinda Azie [Plaintiff's Deposition], *attached to* Defendant's Memorandum in Support of Motion for Summary Judgment [Defendant's Memorandum], at 39. Plaintiff's chief responsibility was calling on the Defendant's current and potential customers in order to sell advertising in the telephone directory known as "the *Real* Yellow Pages®." *Id.* Although Azie appears to have been a productive DTSR, she was no stranger to disciplinary proceedings for violations of company policies or disobeying her supervisors. Affidavit of Teresa Lindsay, *attached to* Defendant's Memorandum, at ¶ 5. Her personnel records reflect specific disciplinary actions taken against her which predate the 1995 and 1996 incidents giving rise to this lawsuit. Plaintiff's Deposition, at 48, 64–65, 84–85, 117, Deposition Exhibits 2, 3, 5, 12; Lindsay Affidavit, at ¶ 5; Exhibit A, *attached to* Lindsay Affidavit. Plaintiff alleges in her memoranda of law that these disciplinary actions against her were all racist in nature.

On January 25, 1995, Azie was suspended for violating company policy by allegedly "blitzing" escort services accounts, a practice involving the improper solicitation of escort services for advertising business. Plaintiff's Deposition, at 106; Lindsay Affidavit, at ¶ 6. The Defendant expressly prohibits this practice by DTSR's, characterizing it as an "unethical sales practice" to be "dealt with in the severest of discipline." Exhibit B, BAPCO Labor Relations Handbook, *attached to* Lindsay Affidavit. Azie's supervisor at the time, an African–American woman named Teresa Adams Lindsay, "had strong reservations about not terminating [Plaintiff's] employment immediately," but settled on a suspension after receiving assurances from Azie that she would not violate company policy in the future.[1] Lindsay Affidavit, at ¶ 6.

Plaintiff contends, again without specific factual support from the record, that another supervisor, Mark Bray, informed her in November 1995 that because of her most recent suspension, she would not be permitted to take the management skills assessment test required for an employee to be eligible for promotion. However, Plaintiff further alleges that in December 1995, a white female employee with a previous disciplinary suspension, Kristen Klakulak, was promoted to a management position despite her suspension. But looking to the record before the Court, Bray testified that he merely informed Azie that he would not feel comfortable recommending her for a management position at that time given her disciplinary history and involvement in unethical sales practices, conduct

---

1. Plaintiff's improper conduct also included the failure to follow proper procedures involving the verification of A-listing accounts, a charge more serious than mere blitzing. Lindsay Affidavit, at ¶ 6.

which had "caused her to lose the confidence and support of her management team." Affidavit of Mark Bray, *attached to* Defendant's Memorandum, at ¶'s 5, 6. Further, Lindsay, who was involved in the decision to promote Klakulak, testified that Klakulak's suspension resulted from an "honest mistake" involving an improper long distance call. Lindsay Affidavit, at ¶ 10. Apparently Klakulak, as a new employee, telephoned neighboring Gastonia, North Carolina, believing it to be a local call. *Id.* In receiving the promotion, Klakulak had completed the management skill assessment and had actually applied for the position in question. *Id.* Azie did not take this test nor apply for any management position.

In December 1995, Azie again ran afoul of company policy when she, knowingly or unknowingly, sold a yellow pages ad to a residential customer. Upon learning that the customer's phone line was residential, Azie instructed BAPCO's business department to change the owner's account to a business line, resulting in a higher billing rate for the customer. *Id.*, at ¶ 7. In doing so, Azie represented to the business department that she had the customer's consent to change the account. *Id.* But when the irate customer complained to BAPCO's Customer Service Unit about the switch, Lindsay was alerted and began an investigation. *Id.* At the conclusion of this investigation in May 1996, Lindsay terminated Plaintiff's employment after finding Azie had failed to provide any credible explanation for her actions. *Id.;* Plaintiff's Deposition, at 191, 195, 264. Plaintiff offers no evidence to dispute Lindsay's testimony, but alleges that Bray, who is white, was ultimately responsible for her termination.[2]

Plaintiff additionally alleges that in March 1996, she was denied a sales award to which she was entitled. Although Plaintiff had been notified that her suspension

rendered her ineligible for the awards, Plaintiff alleges that a white supervisor, Jerome Wingate, changed the eligibility rules—and the time frame in which disciplinary actions would be relevant—in order to deny her the award because of his alleged racial bias. However, Plaintiff fails to cite any evidence which supports her speculations.

Following her termination, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) and was issued a right-to-sue letter. Plaintiff filed this action on November 26, 1997, alleging that she was denied a promotion, denied a sales award, harassed, and ultimately terminated based upon her race in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2 *et seq.* On December 31, 1998, Defendant moved for summary judgment. The Magistrate Judge recommended that summary judgment be granted to Defendant. Memorandum and Recommendation, filed February 11, 1999, at 14.

## III. DISCUSSION

A. Plaintiff's has not established a *prima facie* case of discrimination

Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, makes it an unlawful employment practice for an employer:

> to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin.

42 U.S.C. § 2000e—2(a) (1994). The Plaintiff concedes that there is no direct evidence of racial discrimination by any of her supervisors. Consequently, her claim

---

**2.** However, as Defendant points out, the allegation that Bray was responsible for Azie's termination is contradicted by her own testimony in the deposition where she admits she does not know what role Bray played. Plain-

tiff's Deposition, at 256–57. In fact, Defendant contends that many of the allegations and arguments made in Plaintiff's memoranda of law contradict Plaintiff's own deposition testimony.

is evaluated under the *McDonnell Douglas* burden-shifting scheme which controls in disparate treatment cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

Under the *McDonnell Douglas* scheme, "the plaintiff bears the initial burden of proving a *prima facie* case of discrimination by raising an inference that the defendant acted with discriminatory intent." *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1227 (4th Cir.1998). In a case such as this where there is no direct evidence of discriminatory intent, a plaintiff alleging racial discrimination can make a *prima facie* case by showing, 1) she is a member of a protected class; 2) she was qualified for her job and her job performance was satisfactory; (3) in spite of her qualifications, she was fired; and (4) the position remained open to similarly qualified applicants after her dismissal.[3] *Id.*, at 1228 (citing *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817 and *Williams v. Cerberonics, Inc.*, 871 F.2d 452, 455 (4th Cir.1989)). Although this initial burden is not designed to be onerous, the plaintiff-employee still must prove a *prima facie* case by a preponderance of the evidence. The Plaintiff here has failed to meet even this initial evidentiary burden.

■ Despite repeatedly referring to "the record," and arguing the facts throughout her memoranda of law, Plaintiff does not provide a *single* citation to a specific portion of the record in support of her arguments. Nor does she introduce *any* actual evidence which supports her allegations—not even her own affidavit or deposition transcript.[4] In fact, the only actual evidence in the record before the Court was supplied by the Defendant. Not surprisingly, this evidence tends to refute and undermine the allegations made by Plaintiff.[5]

As opposed to the lack of evidence produced by the Plaintiff, the Defendant has provided the Court with sufficient evidence to show that summary judgment is appropriate under Fed.R.Civ.P. 56(c). Thus, the burden is shifted to the Plaintiff to demonstrate a genuine issue of material fact. *Stroud*, 13 F.3d at 798. Plaintiff must meet this burden by presenting specific and material evidence. *Ross*, 759 F.2d at 364. Allegations or denials alone will not suffice. *Matsushita Electric*, 475 U.S. at 574, 106 S.Ct. 1348. Nor will a mere scintilla of evidence. *Stroud, supra.* Indeed, the Fourth Circuit has routinely granted summary judgment where a plaintiff offers only unsupported speculation and bare allegations in support of her claims. *Felty v. Graves–Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir.1987); *Ash v. United Parcel Serv.*, 800 F.2d 409, 411–12 (4th Cir.1986). In the instant case, the Court finds that Plaintiff has failed to meet her burden of producing sufficient evidence for a reasonable jury to return a verdict in her favor. *Stroud*, 13 F.3d at 798. As mentioned above, Plaintiff did not produce any evidence whatsoever, let alone sufficient evidence to establish a *prima facie* case by a preponderance of the evidence.[6] Mere allegations and baseless speculation, like the ones offered by Plain-

---

3. The *McDonnell Douglas* proof scheme applies to other types of disparate treatment claims as well. *See e.g. Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959–60 (4th Cir.1996) (failure to promote); *Moore v. City of Charlotte*, 754 F.2d 1100, 1105–06 (4th Cir.1985) (unequal disciplinary treatment).

4. In the Memorandum and Recommendation, the Magistrate Judge clearly noted that Plaintiff had failed to create an evidentiary record on her behalf. Memorandum & Recommendation, at 2 n. 1. However, Plaintiff did not heed this explicit warning and merely submit-

ted objections to the Memorandum and Recommendation which point to nothing more specific than "the record" and "Plaintiff's deposition."

5. This includes the portions of Plaintiff's own deposition transcript which were provided by the Defendant.

6. In addition, Plaintiff's attempt to establish a *prima facie* case has numerous other shortcomings which the Court finds it unnecessary to pursue.

tiff, will not defeat a properly supported motion for summary judgment. *Rountree v. Fairfax County Sch. Bd.*, 933 F.2d 219, 223 (4th Cir.1991) (unsupported arguments of counsel, absent any evidence such as sworn affidavits accompanying objections to a motion for summary judgment, failed to meet the evidentiary standard necessary to create a genuine issue of material fact.) Consequently, summary judgment for the Defendant is proper as a matter of law and Plaintiff's claim against Defendant will be dismissed.

### B. Defendant offered nondiscriminatory explanation for its actions

 Assuming arguendo that Plaintiff had stated a *prima facie* case of discrimination, the Defendant has produced ample evidence of Plaintiff's unsatisfactory disciplinary record. As the Magistrate Judge found, Plaintiff's employment record serves as a legitimate, nondiscriminatory explanation for the Defendant's actions. *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir.1996) (job performance is a valid, non-discriminatory basis for any adverse employment action). Consequently, to survive summary judgment, the Plaintiff must make a two-pronged showing: "[s]he must adduce sufficient evidence that both the proffered, nondiscriminatory reason is false *and* that race discrimination is the 'real reason' for" the employer's action. *Gillins. v. Berkeley Elec. Co-op., Inc.*, 148 F.3d 413, 417 (4th Cir.1998). Plaintiff here fails on both accounts.

In response, Plaintiff alleges these disciplinary actions were all based upon racial motives, and therefore do not amount to a legitimate nondiscriminatory reason for her termination. However, Plaintiff again does not offer any evidence in support of these allegations, failing to even identify specific parts of her own deposition which support her assertions. Because Plaintiff has not produced any specific evidence outside of base allegations and unfounded speculation, no rea-sonable jury would be able to conclude that she carried her ultimate burden of proving intentional discrimination. *Stroud,* 13 F.3d at 798.

### IV. ORDER

IT IS, THEREFORE, ORDERED, that the Defendant's motion for summary judgment is hereby **GRANTED**.

A Judgment dismissing this action in its entirety is filed herewith.