Rustin D. RICE, individually and d/b/a Emma Equipment Rental, Blue Ridge Electric Motor Repair, Inc., and WNC Starter & Alternator, a division of Blue Ridge Electric Motor Repair, Inc., Plaintiffs,

v.

BELLSOUTH ADVERTISING & PUBLISHING CORP; and Bellsouth Telecommunications, Inc., f/k/a Southern Bell Telephone & Telegraph Company, Defendants.

No. CIV. 1:02CV119.

United States District Court,
W.D. North Carolina,
Asheville Division.

Dec. 12, 2002.

Edward L. Bleynat, Jr., Ferikes & Bleynat, Asheville, NC, Michael G. Wimer, Arden, NC, for Plaintiffs.

James H. Kelly, Jr., Kristin M. Major, Kilpatrick Stockton LLP, Winston–Salem, NC, for Defendants.

### MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Plaintiffs' Objections to the Memorandum and Recommendation of United States Magistrate Judge Max O. Cogburn, Jr. Plaintiffs filed their original complaint in the General Court of Justice for the State of North Carolina, Superior Court Division, Buncombe County. Defendants removed the action to this Court on May 13, 2002, and filed their motion to dismiss or, alternatively, to transfer.

Pursuant to standing Orders of Designation and 28 U.S.C. § 636, this Court referred the Defendants' motion to the Magistrate Judge for a recommendation as to disposition. The Magistrate Judge issued a detailed memorandum regarding the disposition of Plaintiffs' claims, recommending that all of the Plaintiffs' claims should be transferred to the Northern District of Georgia. The Plaintiffs filed timely objections to the Magistrate Judge's recommendation and the Defendants filed a timely reply.

For the reasons stated below, the Court denies the Defendant's motion to dismiss and respectfully disagrees with the Magistrate Judge's recommendation granting Defendants' motion to transfer.

### I. STANDARD OF REVIEW

The district court conducts a *de novo* review of those portions of a Magistrate Judge's Memorandum and Recommendation to which specific objections are filed. *See* 28 U.S.C. § 636(b). This Court will not address general objections to the Magistrate Judge's Recommendation. "A general objection ... has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby making the initial reference to the magistrate useless." *Howard v. Secretary of HHS*, 932 F.2d 505, 509 (6th Cir.1991). In this Circuit, *de novo* review is unnecessary "when a party makes general and conclusory objections that do not direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir.1982).

The Plaintiffs filed four specific objections to the Magistrate Judge's Recommendation. Plaintiffs' Objections to the Findings of Fact, Conclusions of Law, and Recommendations of the Magistrate Judge ["**Plaintiffs' Objections**"], filed August 1, 2002, at 2. Thus, this Court will conduct a *de novo* review of the Plaintiffs' specific objections.

### II. STATEMENT OF FACTS

Plaintiff Rustin Rice and his wife, Sharon Rice, reside in Buncombe County. Mr. Rice owns Emma Equipment Rental, located in Asheville. Together, the Rices own and operate Blue Ridge Electric Motor Repair, Inc. (Blue Ridge), and its division, WNC Starter & Alternator (WNC Starter), located in Asheville. Plaintiffs are BellSouth telephone service subscribers. *Id.*, at 3.

Defendants are Georgia corporations. BellSouth provides telecommunications services, including directory assistance, and the white pages of the phone book in North Carolina. BellSouth Advertising & Publishing Corporation (BAPCO) is an af-

filiate of BellSouth and is responsible for publishing the yellow pages of the phone book. *Id.*

Plaintiffs, as BellSouth customers, had an agreement that each of their businesses would be listed in the white pages of the 2001–02 phone book. In addition, Defendants agreed, for a fee, to publish a yellow pages advertisement for Emma Equipment. Complaint, at 5. Further, WNC Starter was supposed to have a listing, but not an advertisement, in the yellow pages. *Id.,* at 7. When the 2001–02 phone book was published, the following mistakes had occurred: the phone number in the white pages for Blue Ridge was incorrect; there was an unauthorized advertisement in the yellow pages for WNC Starter; and there was no yellow pages advertisement, no listing in the white pages, and no listing in directory assistance for Emma Equipment. *Id.,* at 6. Plaintiffs claim that these omissions have been detrimental to their businesses' success. *Id.*

The form contract used for these advertisements contained a choice of forum clause, stating that "[a]ny litigation arising hereunder shall be filed only in the Federal District Court for the Northern District of Georgia or the Superior Court of DeKalb County, Georgia, and you hereby consent to the jurisdiction of such courts." **Exhibit C,** *attached to* **Defendants' Response to Plaintiffs' Objections to the Magistrate's Recommendation ["Defendants' Response"], filed August 15, 2002.**

## III. DISCUSSION

### A. Motion to Transfer

This Court addresses *de novo* the Plaintiffs' four specific objections. Upon a careful review of the record, this Court hereby adopts the findings and recommendations of the Magistrate Judge to which no objections were filed.

The Plaintiffs' first specific objection is to the Magistrate Judge's failure to find that the relevant forum selection clause is void *ab initio* under North Carolina law. The clause, therefore, should not have been given any weight in the decision of whether to transfer the case. **Plaintiffs' Objections, at 2.** Plaintiffs argue that under North Carolina law, all choice of forum clauses are void and, therefore, should be given no consideration in the change of venue analysis under 28 U.S.C. § 1404(a).

According to North Carolina law, "any provision in a contract entered into in North Carolina that requires the prosecution of any action or the arbitration of any dispute that arises from the contract to be instituted or heard in another state is against public policy and is void and unenforceable." N.C. Gen.Stat. § 22B–3. Plaintiffs' complete reliance on North Carolina law, however, is misplaced.

With a motion to transfer venue under 28 U.S.C. § 1404(a), the Supreme Court has held that the validity of a forum selection clause is to be determined under federal law. *Stewart Org., Inc., v. Ricoh Corp.,* 487 U.S. 22, 32, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988). Forum selection clauses are *prima facie* valid. *M/S Bremen v. Zapata Off–Shore Co.,* 407 U.S. 1, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972); *see also, Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595, 111 S.Ct. 1522, 113 L.Ed.2d 622 (1991). But, they should not be given dispositive weight. Rather, a forum selection clause should be considered a "significant factor that figures centrally" in the § 1404(a) multi-factor test. *Stewart,* 487 U.S. at 29, 108 S.Ct. 2239. The party opposing the transfer can overcome the presumption in favor of enforcing the forum selection clause by showing that the clause is unreasonable. *Allen v. Lloyd's of London,* 94 F.3d 923, 928 (4th Cir.1996). The Plaintiffs here, then, must demonstrate that the forum selection clause at issue was unreasonable under federal law.

In the Fourth Circuit, forum selection clauses are unreasonable if:

(1) their formation was induced by fraud or overreaching; (2) the complaining party 'will for all practical purposes by deprived of his day in court' because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law may deprive the plaintiff of a remedy; or (4) their enforcement would contravene a strong public policy of the forum state.

*Id.* (quoting *Carnival Cruise Lines,* 499 U.S. at 595, 111 S.Ct. 1522). Here, the Plaintiffs address only the fourth factor, in arguing that enforcement of the forum selection clause would violate the public policy of North Carolina. Plaintiffs further argue that this violation of public policy should automatically make the forum selection clause void. This argument, however, is not in line with the holding in *Stewart.* Under *Stewart,* this Court should take North Carolina's public policy into consideration as a factor in determining whether to transfer this case. Like the forum selection clause itself, North Carolina's public policy should not be determinative. "A court cannot observe *Stewart's* pronouncement that state public policies disfavoring forum-selection clauses do not invalidate such clauses, while at the same time holding that such a policy renders a clause at issue *per se* unreasonable and thus unenforceable." *Cable–La, Inc., v. Williams Communications, Inc.,* 104 F.Supp.2d 569, 576 (M.D.N.C.1999). In other words, after *Stewart,* the existence of a forum selection clause and its relation to the public policy of the forum are two important factors in the multi-factor analysis of a § 1404(a) transfer. Neither, though, is determinative. The undersigned finds, therefore, that the Magistrate Judge was correct in incorporating the forum selection clause as a factor in the § 1404(a) analysis.

Plaintiffs' second objection to the Memorandum and Recommendation is that the Magistrate Judge made "certain factual assumptions about matters affecting venue, where defendants have failed to offer supporting evidence in the record, and so incorrectly balances the factors when recommending transfer." **Plaintiffs' Objections, at 2.** To address this objection, the Court will review the balancing factors involved in recommending the transfer.

In considering a motion to transfer under § 1404(a), courts must evaluate a number of factors. These factors include:

1. The plaintiff[s'] choice of forum;

2. The residence of the parties;

3. The relative ease of access of proof;

4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses;

5. The possibility of a view;

6. The enforceability of a judgment, if obtained;

7. The relative advantages and obstacles to a fair trial;

8. Other practical problems that make a trial easy, expeditious, and inexpensive;

9. The administrative difficulties of court congestion;

10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with the state law that must govern the action; and

11. The avoidance of unnecessary problems with conflict of laws.

*Jim Crockett Promotions, Inc. v. Action Media Group, Inc.,* 751 F.Supp. 93, 96 (W.D.N.C.1990); *see also, Cable–La Inc.,* 104 F.Supp.2d at 577. A court should analyze each of these factors both quantitatively and qualitatively. *McDevitt &*

*Street Co. v. Fidelity & Deposit Co. of Md.,* 737 F.Supp. 351, 354 (W.D.N.C.1990).

### 1. Plaintiffs' choice of forum.

■ "A plaintiff's choice of a proper forum is a paramount consideration in any determination of a transfer request, and that choice ... should not be lightly disturbed." *Datasouth Computer Corp. v. Three Dimensional Tech., Inc.,* 719 F.Supp. 446, 451 (W.D.N.C.1989) (citations omitted). Plaintiffs filed their complaint in the North Carolina state court. In choosing to do so, their forum preference for North Carolina was clear. Defendants argue that the Plaintiffs chose their forum months earlier, when they signed the contract containing the forum selection clause and, therefore, the case should be transferred to Georgia. **Defendants' Response, at 10.** While a valid forum selection clause may weaken or eliminate the deference normally given to the Plaintiffs' choice of forum, as noted earlier, it is not dispositive. *See Stewart, supra.* The Plaintiffs' filing in North Carolina is a stronger showing of their forum preference than their signature on a form contract signed months earlier. This factor favors retention.

### 2. The residence of the parties.

The Plaintiffs, individuals and small business owners, live in Buncombe County, North Carolina. The Defendants, two corporations, are residents of Georgia. However, both Defendants do business and have employees in western North Carolina, including Asheville. The residence of the parties, therefore, favors retention.

### 3. The relative ease of proof; and

### 4. The availability of compulsory process for attendance of witnesses and the costs of obtaining attendance of willing witnesses.

These factors slightly favor retention. There will be witnesses and evidence from both North Carolina and Georgia. It appears that more witnesses live in North Carolina, while more evidence is in Georgia. The fact that Asheville area customers may be called as witnesses only slightly favors retention of the case in this Court. In other respects, one party or the other will bear the cost and inconvenience of travel.

### 5. The possibility of a view.

This factor is irrelevant in this analysis. At issue is a contract dispute. The possibility of a view is unforeseeable.

### 6. The enforceablity of a judgment, if obtained.

All parties and the Court agree that this factor does not favor one forum over the other.

### 7. The relative advantages and obstacles to a fair trial.

This factor is neutral. In either forum, one party may be considered the outsider, while the other may have a "home field" advantage. BellSouth is certainly known in western North Carolina, but its headquarters is in Georgia. The undersigned disagrees with the Magistrate Judge's conclusion that this factor favors transfer. **Memorandum and Recommendation, at 8.** Rather, each party would have few obstacles to a fair trial in either forum.

### 8. Other practical problems that make a trial easy, expeditious, and inexpensive.

In either forum, there will be practical problems such as travel and accommodations for the parties and their counsel. This factor is neutral.

**9. The administrative difficulties of court congestion.**

As the Magistrate Judge noted, this factor favors retention. The docket for the Asheville Division of this District is kept current and an expeditious trial can be expected. **Memorandum and Recommendation, at 9.**

**10. The interest in having localized controversies settled at home and the appropriateness in having the trial of a diversity case in a forum that is at home with a state law that must govern the action; and**

**11. Conflict of laws.**

This controversy occurred in western North Carolina and has the greatest impact on citizens of North Carolina. There is a strong interest in having it resolved in North Carolina. North Carolina has expressed its preference in having its controversies settled at home by enacting legislation voiding forum selection clauses. *See* N.C. Gen.Stat. § 22B–3. This public policy weighs heavily in favor of retaining the suit in North Carolina. Further, the majority of claims will be resolved by North Carolina law. The Court recognizes that there is a limited choice of law clause, choosing Georgia law to settle any contract dispute. Plaintiffs, however, have claims in addition to those contract issues, including tort claims and the claims under North Carolina General Statute § 75–1.1. The interest in having this North Carolina controversy settled in North Carolina, along with the specific claims under a North Carolina statute, favor retention.

■ Weighing all of these factors, the undersigned finds the case should be retained in the Western District of North Carolina.

The Plaintiffs' third objection is that BellSouth should not be able to rely on the forum selection clause found in BAPCO's contract in its efforts to transfer venue. **Plaintiffs' Objections, at 2.** The Plaintiffs' last objection is to the Magistrate Judge's suggestion that the North Carolina statute regulating forum selection clauses might "run afoul of the Contract Clause of the United States Constitution. . . ." **Memorandum and Recommendation, at 10.** Plaintiffs argue that the statute is constitutional and should be applied in this case. Because the undersigned has found that retaining this case in North Carolina is appropriate, the Plaintiffs' third and fourth objections are moot.

**B. Motion to Dismiss**

Defendants have moved for dismissal without prejudice pursuant to 28 U.S.C. § 1406(a), due to improper venue. As discussed above, the undersigned finds that venue is proper in this District, and Defendants' motion to dismiss is, therefore, denied.

Defendants have further moved for dismissal without prejudice pursuant to Rules 12(b)(1–3) and (6) of the Federal Rules of Civil Procedure. Defendants, however, have not provided any support for dismissal under these rules in their memorandum of law supporting their motions. Rather, they have addressed the motion to dismiss simply as an alternative to the motion to transfer under 28 U.S.C. § 1404(a). Nonetheless, the undersigned will briefly address these issues.

It is obvious from the pleadings that this Court has subject matter jurisdiction by reason of diversity. This Court has personal jurisdiction over the Defendants, who do business in North Carolina, publish phone books in North Carolina, and have many employees in North Carolina. Further, the undersigned has ruled that venue in the Western District of North Carolina is proper. Finally, pursuant to Rule 12(b)(6), taking the allegations in the com-

plaint to be true, as the Court must do when considering a motion to dismiss, Plaintiffs have sufficiently stated a claim for breach of contract and for violation of North Carolina General Statute § 75–1.1. *Neitzke v. Williams,* 490 U.S. 319, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). Defendants' motion to dismiss is denied.

### IV.  ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' motion to dismiss or, alternatively, to transfer this action is hereby **DENIED**.

The Defendants shall have 20 days from entry of this Order in which to file answer or otherwise respond to the Plaintiffs' complaint.